UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――x

KENNETH MAUER,

        Plaintiff,

       -against-

___ Civ. _____

NATIONAL BASKETBALL ASSOCIATION, NBA
SERVICES CORP., PENSION COMMITTEE OF
THE NATIONAL BASKETBALL ASSOCIATION
REFEREES 'PENSION PLAN,

        Defendants.

―――――――――――――――――――――――――――x

## **<u>COMPLAINT</u>**

Plaintiff Kenneth Mauer brings the following Complaint for damages under 29 U.S.C. § 1132(a)(1)(B), the Employee Retirement Income Security Act ("ERISA"), against Defendants National Basketball Association ("NBA"), NBA Services Corp. ("NSC"), and the Pension Committee of the National Basketball Association Referees' Pension Plan ("Committee"). Mr. Mauer is a participant in the NBA Referees' Pension Plan ("Plan") (attached as Exhibit A) and seeks review of the Committee's denial of his application for payment of his pension benefits under the Plan.

### **PARTIES**

1.     Mr. Mauer is an individual with an address of 11309 Wine Palm Road, Fort Myers, Florida 33966.

2.     Defendant National Basketball Association is an unincorporated association and has a principal place of business at 645 5th Avenue, New York, New York 10022.

3.      Defendant NBA Services Corp. is an entity incorporated in the State of Washington with its principal place of business at 100 Plaza Drive, Secaucus, New Jersey 07094.

4.      Defendant Pension Committee of the National Basketball Association Referees' Pension Plan is a fiduciary of the Plan and is a named administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

## JURISDICTION AND VENUE

5.      This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action brought under ERISA pursuant to 29 U.S.C. § 1132(a)(1)(B).

6.      This Court has personal jurisdiction over the Defendants because they reside, or conduct business, in New York.

7.      Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because it is where the Plan was administered, and where the Defendants reside or conduct business.

## FACTUAL BACKGROUND

**A.      Mr. Mauer and the NBA's Inoculation Mandate**

8.      Mr. Mauer became an NBA official in 1986.  He was employed by NBA Services Corp. and was one of the longest-serving referees in NBA history.

9.      Before the 2021-22 season, NSC, in conjunction with the National Basketball Referees Association, established a mandate requiring all employees to be inoculated against COVID-19 via a CDC-approved Pfizer, Moderna, or Johnson & Johnson shot.  The policy was that those with sincerely-held religious objections to the COVID-19 inoculation would not be

required to be inoculated and had the opportunity to apply for a religious exemption.  The

basketball players themselves, unlike the referees, were not required to be vaccinated.

10.     Mr. Mauer is a life-long Christian and applied for a religious exemption and

requested an accommodation in September 2021.

11.     NSC denied requests for religious exemptions by the only four referees who

applied for them, including Mr. Mauer in October 2021.

12.     NSC suspended Mr. Mauer without pay or retirement benefits for the entirety of

the 2021-22 season and ultimately terminated him on September 1, 2022, based on its finding in

October 2021 that his religious beliefs were not sincerely held and his failure to comply with its

vaccination policy.

13.     On November 14, 2022, Mr. Mauer – along with two other NBA referees who

were terminated for not complying with NSC's inoculation mandate – filed a lawsuit in this

Court against the NBA and NSC alleging three claims: religious discrimination under Title VII of

the Civil Rights Act of 1964, violation of the New York State Human Rights Law, and violation

of the New York City Human Rights Law.  *See Ayotte et al. v. Nat'l Basketball Ass'n*, Case No.

1:22-cv-09666 ("Discrimination Lawsuit").  They later amended the complaint to add claims

under Section 1983 and the Religious Freedom and Restoration Act.  In the lawsuit, Mr. Mauer

seeks monetary relief *only*, specifically: (1) compensatory damages, which include lost wages

and front pay, reputational damages and damages for emotional pain and suffering; (2) punitive

damages; (3) interest; and (4) attorney's fees and costs.  He is not seeking reinstatement as an

NBA referee.

14.     A little over two months later, on January 17, 2023, Mr. Mauer filed an

application with the NBA Benefits Department to receive payment of his pension benefit under the Plan.  Mr. Mauer cited the termination of his employment as the reason for payment of his Plan benefit.

**B.     The Referees' Pension Plan**

15.     The Plan is a collectively-bargained defined benefit pension plan.  It covers NBA referees and is tax-qualified under Section 401(a) of the Internal Revenue Code.

16.     Benefits under the Plan are payable only upon one of several distribution events, such retirement, the onset of a disability, or termination of employment.  If a participant has not attained a distribution event, he/she is not eligible to be paid his/her benefit from the Plan.

17.     Section 7.1(a) of the Plan states, "[i]f the employment of a Referee is terminated before his [retirement] for reasons other than death or incurring a Total Disability, he shall become a 'Terminated Referee' and shall . . . be vested in a percentage of his Accrued Benefit, based on his completed Years of Referee Service to his date of termination.  Ex. A at VII-1. Article IV sets forth how an "Accrued Benefit" is calculated, which is usually the referee's years of service multiplied by a specific dollar amount.  *Id.* at IV-1 - IV-14.  Section 7.1(a) states "3 or more" "Years of Referee Service" equates to a "Vested Percentage" of 100%.  *Id.* at VII-1.

18.     Accordingly, a long-tenured referee – such as Mr. Mauer – who is terminated is 100% vested and eligible to receive his full benefit under the Plan.

19.     Section 14.3 of the Plan grants a Pension Committee the power to "administer the Plan," including the "power to construe the Plan and to determine all questions that shall arise hereunder," including "the power to determine questions relating to eligibility for, and the amount of, benefits under the Plan."  *Id.* at XIV-1 - XIV-2.

4

20.     The Plan does not, however, provide the Committee with any discretion in determining whether a terminated referee is entitled to his/her benefit: as noted above, Section 7.1(a) makes it clear that a terminated referee with more than three years of service is entitled to 100% of his/her benefit.  *Id.* at VII-1.  In denying Mr. Mauer's application for his pension benefits (as explained further below), the Committee treated Mr. Mauer differently than it has other referees who were terminated and applied for their benefits.

**C.      The Committee's Denial of Mr. Mauer's Application for Pension Benefits**

21.     After receiving Mr. Mauer's application, the Benefits Department forwarded it to the Committee for review.

22.     The Committee issued a Determination on March 1, 2023 ("Exhibit B").  It denied Mr. Mauer's application for payment of his pension benefits under the Plan.  *See id.*

23.     The Committee noted, that on November 14, 2022, two months before filing his application for pension benefits, Mr. Mauer filed the Discrimination Lawsuit in this Court.  *Id.* at 2.  The Committee suggested that a request in the final section of the Complaint in that Lawsuit for "such other relief as the Court deems just and proper" "may" – in addition to the monetary damages he requested – "include reinstatement of employment."  *Id.*  Based on that faulty premise, the Committee concluded it was "not sufficiently clear" Mr. Mauer "attained a distribution event for purposes of the Plan."  *Id.*  It then concluded, based on this perceived "uncertainty regarding [Mr. Mauer's] intention to return to employment," he has "not attained a distribution event under the Plan," which is required before a pension payment can be made.  *Id.* It then denied his application.  *Id.*

24.     On March 21, 2023, Mr. Mauer sought review and reversal of the Committee's

Determination pursuant to section 16.2 of the Plan.  In his appeal, Mr. Mauer noted that the Committee based its denial on the erroneous conclusion that his request for "such other relief as the Court deems just and proper" "may include reinstatement of employment."  This is incorrect: Mr. Mauer does not seek, does not want, and will not accept reinstatement as an NBA referee.

25.    "[L]anguage . . . seeking 'such other and further relief as the court may deem proper 'is mere boilerplate, meant to cover all bases ***as to the claims asserted in the complaint***." *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277 n.6 (9th Cir. 2006) (emphasis added); *see also Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 90 (2d Cir. 2005) (holding a general claim for "other such relief as the Court deems appropriate" cannot be read to include a compensatory award); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141-42 (2d Cir. 1994) (declining "to read a damages claim into the Complaint's boilerplate prayer for 'such other relief as the Court deems just and proper'"); *Governor Wentworth Reg'l Sch. Dist. v. Hendrickson*, 201 F. App'x 7, 9 (1st Cir. 2006) (holding general request for "all such further relief as the Court may deem just and proper" in counterclaim for injunctive relief did not include a defamation cause of action); *Cent. Fla. Council v. Rasmussen*, No. 6:07-cv-1091-Orl-19GJK, 2010 U.S. Dist. LEXIS 39947, at *27 (M.D. Fla. Mar. 28, 2010) (holding claim for conversion, which requested return of equipment and "any other relief as the Court deems just and proper under the circumstances" did not request monetary damages or any other relief other than return of the equipment); *Toyo Tire & Rubber Co., Ltd v. Fitinparts-USA, LLC*, No. SACV 15-513-JLS (RNBx), 2016 U.S. Dist. LEXIS 129781, 2016 WL 5219465 (C.D. Cal. June 6, 2016) (denying request for statutory damages not stated in the prayer for relief noting that a general "entitlement" to relief in the body of a

complaint is not the same as requesting a specific type of remedy in the Prayer).

26.     For example, in *Silge*, the Second Circuit rejected the appellant's argument that his generic request for "such other and further relief which this Court deems just and proper" in his complaint implied a demand for pre-judgment interest. *Id.* at 160. The district court did not allow pre-judgment interest as part of the appellant's recovery of damages for a default judgment because it was not pled or requested in his complaint. *Id.* at 158. The Second Circuit affirmed the district court's judgment. *Id.*

27.     Rather, a plaintiff waives specific relief he fails to plead in a complaint. *M.H. v. Pelham Union Free Sch. Dist.*, 168 F. Supp. 3d 667, 679 (S.D.N.Y. 2016) (holding plaintiffs waived any claim for compensatory relief under the Individuals with Disabilities Education Act for the 2012-13 school year because it was not pled in their complaint); *Blake v. Dowe*, 36 F. Supp. 3d 271, 278 (D. Conn. 2014) (holding plaintiff waived Dram Shop Act claim because she did not plead it in her complaint).

28.     Mr. Mauer's Complaint in the Discrimination Lawsuit alleges only *monetary* damages in connection with the claims he asserts. He seeks (1) compensatory damages, which include lost wages and front pay, reputational damages and damages for emotional pain and suffering; (2) punitive damages; (3) interest; and (4) attorney's fees and costs. Unlike these specific requests for relief, he does not seek — and he certainly does not want — reinstatement to his position as an NBA referee. Mr. Mauer submitted a signed affidavit with his appeal confirming that point ("Exhibit C").

29.     Mr. Mauer's general request that the Court "award such other and further relief as the Court deems just and proper" is – as many courts have held – "mere boilerplate" that was

included only to cover "all bases as to the claims" and relief he asserted in his Complaint in the

Discrimination Lawsuit – here, violation of Title VII and the New York State and City Human

Rights Laws and his requests for monetary relief.  Although these laws permit courts to award

equitable relief such as reinstatement, Mr. Mauer's Complaint does not seek such relief and it is

thus waived.  *See Teutscher v. Woodson*, 835 F.3d 936, 955 (9th Cir. 2016) (holding plaintiff

"waived his right to a reinstatement award when he affirmatively elected to seek front pay from

the jury").

      30.    Moreover, it is black letter law that a terminated employee must elect between

reinstatement and front pay.  *See Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 379 (1st

Cir. 2004) ("Front pay . . . is 'money awarded for lost compensation during the period between

judgment and reinstatement or in lieu of reinstatement.'") (quoting *Pollard v. E. I. du Pont de

Nemours & Co.*, 532 U.S. 843, 846 (2001)); *Teutscher*, 835 F.3d at 954 ("Reinstatement and

front pay are alternative remedies, which cannot be awarded for the same period of time.");

*Wilson v. S & L Acquisition Co., L.P.*, 940 F.2d 1429, 1438 (11th Cir. 1991) ("The general rule is

that prospective damages are awarded in lieu of reinstatement when it is not feasible to reinstate

the employee."); *Weiss v. Parker Hannifan Corp.*, 747 F. Supp. 1118, 1135 (D.N.J. 1990) ("Front

pay may be awarded as an equitable remedy in lieu of reinstatement when plaintiff's return to the

work place would cause disharmony and acrimony.").

      31.    By specifically seeking front pay in his Prayer for Relief (and in other sections of

the Complaint in the Discrimination Lawsuit), Mr. Mauer elected that remedy and waived

reinstatement.  An election of remedies is required under law since reinstatement and front pay

serve the same end: they each compensate the terminated employee for future losses, either by

returning him to his former position or by compensating him while he continues his search for alternative employment.  Were an employee to obtain both forms of relief, he would obtain a duplicative recovery, something impermissible under law.  *See Teutscher*, 835 F.3d at 956 (setting aside district court's order of reinstatement because plaintiff received jury award for front pay); *see also Smith v. World Ins. Co.*, 38 F.3d 1456, 1466 (8th Cir. 1994) ("Front pay may be awarded in lieu of, but not in addition, to reinstatement.")

32.     Despite the foregoing on May 19, 2023, the Committee issued a Final Determination ("Exhibit D").  It, nevertheless, concluded Mr. Mauer has "not attained a distribution event under the Plan due to the uncertainty as to whether or not [he] might return to work as an NBA referee at some point in the future."  Ex. D at 2.  The Committee concluded "[t]he authorities cited in [Mr. Mauer's appeal] do not support the conclusion that the Complaint's omission of a specific request for reinstatement of employment precludes [Mr. Mauer] from seeking such relief" because they are "distinguishable."  *Id.*  It reasoned that, so long as Mr. Mauer pursues the Discrimination Lawsuit, he "retain[s] the right to seek reinstatement even though such relief was not specified in the Complaint."  *Id.* at 2-3.  It alleges – despite the fact the Discrimination Lawsuit is well into discovery – that Mr. Mauer could always "seek reinstatement by amending the Complaint."  *Id.* at 3.  Accordingly, the Committee denied Mr. Mauer's "benefit claim under the Plan because it is not clear at this time that the Plan can make such payment in accordance with the Plan's terms and in compliance with all laws governing tax-qualified plans."  *Id.*

33.     The time for asserting additional claims in the Discrimination Lawsuit has, however, passed.  The Amended Case Management Plan and Scheduling Order (paragraph 5) in

that Lawsuit ("Exhibit E") required all additional claims to be filed by April 3, 2023.

## COUNT I
### (Claim for Benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

34.     Mr. Mauer incorporates herein each and every allegation made in the paragraphs above as if fully set forth herein.

35.     Mr. Mauer has exhausted his administrative remedies.

36.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

37.     ERISA requires the Plan to provide a lump sum benefit upon one of several distribution events, such as the termination of one's employment.

38.     Mr. Mauer is entitled to his benefits under section 7.1(a) of the Plan because the NBA terminated his employment on September 1, 2022.

39.     Defendants denied Mr. Mauer's application for that benefit payment.

40.     By denying Mr. Mauer his benefit, Defendants have violated, and continue to violate, the terms of the Plan, applicable ERISA law, and Mr. Mauer's rights under the Plan and applicable law.

## COUNT II
### (Claim for Breach of Fiduciary Duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

41.     Mr. Mauer incorporates each and every allegation made in the paragraphs above as if fully set forth herein.

42.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a beneficiary of a plan to

file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a plan, and/or to obtain "other appropriate relief" to redress such violations.

43.     By engaging in the acts and omissions described above, including, but not limited to, interpreting the Plan in a manner contrary to applicable federal law, and refusing to provide Mr. Mauer with a benefit mandated by ERISA, Defendants have breached their fiduciary duty to Mr. Mauer and violated Title I of ERISA.

44.     As a result of this Defendants' breaches of fiduciary duty and violations of Title I of ERISA, Mr. Mauer has suffered damages.

WHEREFORE, Mr. Mauer respectfully prays for the following relief:

A.     Declare the Defendants violated the terms of the Plan;

B.     Order the Defendants to pay Mr. Mauer his pension benefits;

C.     Declare that Mr. Mauer has a right to receive his pension benefits;

D.     Grant surcharge relief in an amount to be determined by the Court;

E.     Award Mr. Mauer his reasonable attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

F.     Award pre- and post-judgment interest;

G.     Grant any other relief this Court deems just and proper.


Dated: June 10, 2023


Respectfully submitted,

LAW OFFICES OF SHELDON KARASIK P.C.

Attorneys for Plaintiff

By:_____/s/ *Sheldon Karasik*_____
Sheldon Karasik (SK-4020)
244 Fifth Avenue
Suite Q249
New York, NY 10001
Direct Dial: (917) 587-8153
Email: Sheldon@karasiklawoffices.com