Myron D. Rumeld (1929678)
Daniel B. Wesson (5955620)
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KENNETH MAUER,<br><br>                    Plaintiff,<br><br>          v.<br><br>NATIONAL BASKETBALL ASSOCIATION;<br>NBA SERVICES CORP.; PENSION COMMITTEE<br>OF THE NATIONAL BASKETBALL<br>ASSOCIATION REFEREES PENSION PLAN,<br><br>                    Defendants. | Case No. 1:23-cv-04937-JPO<br><br>**DEFENDANTS'**<br>**MEMORANDUM OF**<br>**LAW IN SUPPORT OF**<br>**<u>MOTION TO DISMISS</u>**<br><br>***Oral Argument Requested*** |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND ..................................................................................2

I.    RELEVANT TERMS OF THE PLAN..............................................................2

    A.    The Plan's Operation ..............................................................2
    B.    Benefit Payments Under the Plan .............................................2
    C.    Conditions for Distribution of Benefits Under the Plan ..........................3

II.    MAUER'S EMPLOYMENT AND HIS SUBSEQUENT LAWSUIT
    CHALLENGING HIS DISCHARGE.................................................................3

III.    MAUER'S ADMINISTRATIVE CLAIM FOR IMMEDIATE PAYMENT OF A
    PENSION BENEFIT ......................................................................4

IV.    MAUER'S LAWSUIT SEEKING IMMEDIATE PAYMENT OF HIS BENEFIT ..........5

STANDARD OF REVIEW ...................................................................5

ARGUMENT .....................................................................................8

I.    MAUER'S CLAIM FOR BENEFITS UNDER ERISA SECTION 502(a)(1)(B)
    SHOULD BE DISMISSED ..............................................................8

    A.    The Committee Did Not Unreasonably Conclude That Benefit Payments
        Cannot Commence If There Is Uncertainty As To Whether A Participant
        Will Return To Covered Employment. ..........................................8

    B.    The Committee Reasonably Found Uncertainty As To Whether Mauer
        Might Be Reinstated As a Result of The Discrimination Lawsuit.........................10

        1.    Mauer's Failure to Explicitly Request Reinstatement In The
            Discrimination Lawsuit Does Not Prevent A Court From Awarding
            It To Him. .................................................................. 11

        2.    Mauer's Request For Front Pay In The Discrimination Lawsuit
            Does Not Preclude A Court From Awarding Him Reinstatement
            Instead. ..................................................................... 12

        3.    Mauer's Affidavit Does Not Remove the Prospects of His
            Potentially Being Reinstated. ................................................ 13

II.    MAUER'S FIDUCIARY BREACH CAUSE OF ACTION SHOULD BE
    DISMISSED BECAUSE IT IS DUPLICATIVE AND FAILS TO STATE A
    CLAIM.....................................................................................13

III.  THE NBA AND NBA SERVICES ARE NOT PROPER DEFENDANTS AND
      THE CLAIMS AGAINST THEM SHOULD BE DISMISSED ......................................15

CONCLUSION..........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Aracich v. Bd. of Trs. of the Emp. Benefit Funds of Heat & Frost Insulators Loc. 12,*
    629 F. Supp. 3d 103 (S.D.N.Y. 2022)......................................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................5, 6

*Babino v. Gesualdi,*
    278 F. Supp. 3d 562 (E.D.N.Y. 2017), *aff'd,* 744 F. App'x 30 (2d Cir. 2018).......14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................................5

*Blake v. Dowe,*
    36 F. Supp. 3d 271 (D. Conn. 2014)..........................................................................12

*Casagrande v. Siemens AG,*
    No. 11-cv-5442, 2013 WL 2489933 (S.D.N.Y. June 11, 2013), *aff'd sub nom.*
    *Casagrande v. Siemens Corp.,* 556 F. App'x 54 (2d Cir. 2014)..................................6

*Celardo v. GNY Auto. Dealers Health & Welfare Tr.,*
    318 F.3d 142 (2d Cir. 2003).........................................................................................6

*Cent. Fla. Council Boy Scouts of Am., Inc. v. Rasmussen,*
    No. 07-cv-1091, 2010 WL 1258070 (M.D. Fla. Mar. 29, 2010), *aff'd,*
    412 F. App'x 230 (11th Cir. 2011) ............................................................................11

*Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan,*
    No. 17-cv-2729, 2018 WL 4052182 (D. Md. Aug. 23, 2018) .....................................9

*Crocco v. Xerox Corp.,*
    137 F.3d 105 (2d Cir. 1998).......................................................................................15

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund,*
    609 F.3d 133 (2d Cir. 2010).........................................................................................7

*Fox v. Bd. of Trs. of the State Univ. of N.Y.,*
    42 F.3d 135 (2d Cir. 1994).........................................................................................11

*Frommert v. Conkright,*
    433 F.3d 254 (2d Cir. 2006).......................................................................................13

*Galli v. PricewaterhouseCoopers LLP Notice/Severance Policy*,
   No. 19-cv-7224, 2020 WL 4605240 (S.D.N.Y. Aug. 11, 2020)................................................9

*Governor Wentworth Reg'l Sch. Dist. v. Hendrickson*,
   201 F. App'x 7 (1st Cir. 2006)..............................................................................................11

*In re DeRogatis*,
   904 F.3d 174 (2d Cir. 2018)............................................................................................6, 14

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007)....................................................................................................6

*Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*,
   46 F.3d 1264 (2d Cir. 1995)..................................................................................................7

*Kazazian v. Bartlett & Bartlett LLP*,
   No. 03-cv-7699, 2006 WL 2563517 (S.D.N.Y. Sept. 6, 2006) .............................................15

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*,
   397 F.3d 77 (2d Cir. 2005)..................................................................................................11

*M.H. v. Pelham Union Free School District*,
   168 F. Supp. 3d 667 (S.D.N.Y. 2016)..................................................................................12

*Manning v. Metal Lathers' Loc. 46 Pension Fund*,
   No. 11-cv-7105, 2013 WL 1287336 (S.D.N.Y. Mar. 28, 2013)..............................................7

*Mayer v. Ringler Assocs. Inc.*,
   9 F.4th 78 (2d Cir. 2021) ..................................................................................................6, 8

*McCauley v. First Unum Life Ins. Co.*,
   551 F.3d 126 (2d Cir. 2008)..................................................................................................7

*Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*,
   No. 20-cv-3791, 2022 WL 610340 (2d Cir. Mar. 2, 2022)...................................................10

*Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*,
   No. 13-cv-85, 2019 WL 1428083 (W.D.N.Y. Mar. 28, 2019) *R&R adopted by*,
   2020 WL 5939202 (W.D.N.Y. Oct. 7, 2020), *aff'd*, No. 20-cv-3791, 2022 WL
   610340 (2d Cir. 2022)........................................................................................................14

*Miller v. United Welfare Fund*,
   72 F.3d 1066 (2d Cir. 1995)..................................................................................................6

*Neely v. Pension Tr. Fund of the Pension, Hospitalization & Benefit Plan of the
   Elec. Indus.*,
   No. 00-cv-2013, 2003 WL 21143087 (E.D.N.Y. Jan. 16, 2003), *order
   clarified*, 2003 WL 21448872 (E.D.N.Y. June 4, 2003).........................................................7

*O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*,
     37 F.3d 55 (2d. Cir. 1994) ...................................................................................9

*Roe v. Empire Blue Cross Blue Shield*,
     No. 12-cv-4788, 2014 WL 1760343 (S.D.N.Y. May 1, 2014) *aff'd*, 589 F.
     App'x 8 (2d Cir. 2014).............................................................................2, 14

*Rudolph v. Joint Indus. Bd. of the Elec. Indus.*,
     137 F. Supp. 2d 291 (S.D.N.Y. 2001).....................................................................7

*Silge v. Merz*,
     510 F.3d 157 (2d Cir. 2007).............................................................................11, 12

*Stets v. Securian Life Ins. Co.*,
     No. 17-cv-09366, 2020 WL 1467395 (S.D.N.Y. Mar. 25, 2020)............................9

*Teutscher v. Woodson*,
     835 F.3d 936 (9th Cir. 2016) ...........................................................................13

*Toyo Tire & Rubber Co., Ltd v. Fitinparts-USA, LLC*,
     No. 15-cv-513, 2016 WL 5219465 (C.D. Cal. June 3, 2016)................................11

**STATUTES**

26 U.S.C. § 401(a) ...................................................................................................9

26 U.S.C. § 401(a)(9)(C) .........................................................................................9

26 U.S.C. § 401(a)(36)(A) .......................................................................................9

29 U.S.C. § 1002(2) .................................................................................................2

29 U.S.C. § 1132(d)(2) ...........................................................................................15

42 U.S.C. § 2000e–5(g)(1).......................................................................................12

Civil Action for Deprivation of Rights, 42 U.S.C. § 1983 ......................................4

Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e- 2 *et seq.*...........................4, 12

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ...............................5, 13, 15

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ........................................................5, 13

New York State Human Rights Law, N.Y. Exec. Law § 296 (McKinney 2022)...........................4

Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*................................4

**OTHER AUTHORITIES**

Employee Benefits Committee of the American Bar Association's Labor and
   Employment Law Section, *Employee Benefits Law, Chapter 5. Regulation of
   Qualified Retirement Income Plans Generally* (current through Decemeber
   31, 2020, with selected updated throught April 30, 2021).......................................................9

Fed. R. Civ. P. 8(d) ...............................................................................................................13

Fed. R. Civ. P. 12(b)(6)...........................................................................................................5

Fed. R. Civ. P. 54(c) .............................................................................................................12

Merriam-Webster's Dictionary, *termination*, https://www.merriam-
   webster.com/dictionary/termination (last visited July 14, 2023)............................................9

Title 8, Civil Rights, Unlawful Discriminatory Practices, N.Y.C. Admin. Code §
   8-107 ............................................................................................................................4

## PRELIMINARY STATEMENT

Plaintiff Kenneth Mauer ("Plaintiff" or "Mauer") commenced this lawsuit, seeking an immediate lump sum payment of his retirement benefit under the National Basketball Association Referees Pension Plan (the "Plan").  Although there is no dispute that Mauer will be entitled to receive a retirement benefit, the Plan's Pension Committee (the "Committee") reasonably determined that he was not entitled to receive that benefit immediately because of uncertainty as to his retirement status that was created by another lawsuit he filed challenging the termination of his employment as a National Basketball Association ("NBA") referee. Accordingly, his Complaint should be dismissed.

Before filing this lawsuit for payment of his benefit, Mauer filed an administrative claim, which was fully exhausted and rejected by the Committee.  Because the Plan accords the Committee the discretion to interpret the Plan and make benefit determinations, this Court's role is limited to determining whether the Committee's determination was arbitrary and capricious. Mauer's Complaint provides no basis for so concluding.

Mauer has not disputed that, under the terms of the Plan, he is not entitled to immediately receive his benefit if there is uncertainty as to whether he might return to work as an NBA referee.  Instead, he argues that there is no uncertainty here because, even though his other lawsuit challenges the NBA's decision to terminate his employment, he did not expressly seek reinstatement in that complaint.  The Committee reasonably determined, however, that Mauer was not legally precluded from amending his request for relief and seeking reinstatement, particularly if the court were to determine that he was not entitled to the front pay relief he alleges he is seeking instead.  Thus, while the NBA considers Mauer's discrimination claims to be without merit, there remains some level of uncertainty as to whether, if Mauer were to prevail,

he could return to active employment.  Under the Committee's reasonable interpretation of the Plan, that uncertainty precludes immediate payment of his benefit.

Accordingly, the Court should dismiss Mauer's claims for relief.

## FACTUAL BACKGROUND

This statement of facts derives from the allegations of the Complaint, which are deemed to be true solely for purposes of this motion; and the documents referenced therein,[1] including the administrative record.

## I.    RELEVANT TERMS OF THE PLAN

### A.    The Plan's Operation

The Plan is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2). (*See* ECF No. 1 ("Compl.") ¶ 15.)  The Plan is administered by the Committee.  (*See* (ECF No. 1-1) ("Plan") § 14.1.)  The Plan grants the Committee "complete control in the administration [of the Plan]," and provides that the Committee's decision "as to any disputed question . . . including questions of construction, interpretation and administration shall be final, binding and coercive." (*See* Plan § 14.3.)  Neither the NBA nor NBA Services Corp. ("NBA Services"), the two other defendants in this lawsuit, have any responsibility for the operation of the Plan.  (*Id.* § 14.3.)

### B.    Benefit Payments Under the Plan

Participants in the Plan accrue a Normal Retirement Benefit based on their years of service and when they began participating in the Plan.  (*See id.* §§ 1.1, 4.1, 4.1A.)  The Normal

---

[1] In deciding this Motion, the Court may consider documents referred to or incorporated by reference into the Complaint. *See Roe v. Empire Blue Cross Blue Shield*, No. 12-cv-4788, 2014 WL 1760343, at *2 (S.D.N.Y. May 1, 2014) ("On a motion to dismiss, the court may consider the documents that are asserted within the four corners of the complaint . . . and any documents incorporated in the complaint by reference . . . . The court may deem a document incorporated by reference where the complaint refers to the document.") (quotation marks and citations omitted) *aff'd*, 589 F. App'x 8 (2d Cir. 2014).

Retirement Benefit is based on an assumed age 65 Normal Retirement Date and is expressed as an annuity with the first ten years of payment guaranteed.  (*See id.* § 4.1.)  Participants can also elect to receive their benefits in other forms, including a lump sum.  The amount of the benefit will be actuarially adjusted to take into account any time between the Normal Retirement Date and the commencement of benefit payment, (*id.* § 4.2), and the chosen form of benefit.  (*Id.* § 8.3(d).)

   **C.      Conditions for Distribution of Benefits Under the Plan**

   The permitted distribution events under the Plan are retirement from employment, or termination of employment, attainment of age 70 1/2 while actively employed as a referee, disability, or death.  (*Id.* §§ 8.1(b), 8.2(a) and 8.2(b).)

**II.    MAUER'S EMPLOYMENT AND HIS SUBSEQUENT LAWSUIT CHALLENGING HIS DISCHARGE**

   Mauer was employed by the NBA and then NBA Services as a referee beginning in 1986. (*See* Compl. ¶ 8.)  He was discharged on September 1, 2022 for failure to inoculate against COVID-19 in accordance with a vaccine requirement set forth in an agreement entered into by NBA Services and the National Basketball Referees Association (the union representing Mauer and other NBA referees).  (*See id.* ¶¶ 9–12.)

   On November 12, 2022, Mauer filed a lawsuit against the NBA and NBA Services challenging his discharge.  *Phillips v. Nat'l Basketball Ass'n*, No. 22-cv-9666-VSB-RWL (S.D.N.Y) ("Discrimination Lawsuit").[2]  The operative complaint alleges five causes of action. (Discrimination Lawsuit, ECF No. 36, attached as Exhibit 1 to Declaration of Myron D. Rumeld in Support of Defendants' Motion to Dismiss ("Discrimination Lawsuit Compl.")).  They

---

[2] One other former referee and a former NBA referee manager employee are also plaintiffs in the Discrimination Lawsuit.

allegedly arise under: the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e- 2 *et seq*. (*id*. ¶ 110); New York State Human Rights Law, N.Y. Exec. Law § 296 (McKinney 2022) (*id*. ¶ 140); Title 8, Civil Rights, Unlawful Discriminatory Practices, N.Y.C. Admin. Code § 8-107 (*id*. ¶ 152); Civil Action for Deprivation of Rights, 42 U.S.C. § 1983 (*id*. ¶ 167); and the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq*. (*id*. ¶ 167).  The complaint demands a broad range of relief, including "front and back pay," "such other and further relief as the Court deems just and proper," and "all relief available under the law."  (Discrimination Lawsuit Compl. at 51–52.)  The NBA answered the complaint and discovery is ongoing.  (*See* Discrimination Lawsuit, ECF Nos. 40, 51.)

### III.   MAUER'S ADMINISTRATIVE CLAIM FOR IMMEDIATE PAYMENT OF A PENSION BENEFIT

On January 17, 2023, Mauer submitted a claim to the Committee seeking immediate payment of his pension benefit in the form of a lump sum.  (*See* ECF No. 1-2, "Determination" at 1.)  The Committee denied the claim, finding that Mauer had not satisfied the conditions for immediate receipt of his benefit.  Specifically, the Committee found that, in light of the pendency of the Discrimination Lawsuit, there was uncertainty as to whether Mauer might return to employment as an NBA referee, and thus that he had not "attained a distribution event," "such as retirement or termination of employment," within the meaning of the Plan.  (*Id.* at 2.)

Mauer appealed the Committee's determination on March 23, 2023.  (*See* ECF No. 1-3 "Appeal".)  In his appeal, Mauer did not dispute the Committee's construction of the Plan to preclude immediate payment of his benefits if there was uncertainty as to whether he might return to employment as a referee.  Instead, he contended that there was no such uncertainty because his discrimination complaint against the NBA demanded front pay, rather than reinstatement.  In furtherance of this argument, he cited case law that he claimed supported the

conclusion that he was precluded from seeking reinstatement, and attached a declaration in which he stated that he did not intend to seek reinstatement.  (*Id.* at Ex. A.)

The Committee denied Mauer's appeal on May 19, 2023.  (*See* ECF No. 1-4 "Final Determination".)  The Committee found that the case law cited by Mauer did not support the conclusion that he was precluded from amending his demands for relief to seek reinstatement, and that in fact it supported the conclusion that, if Mauer was unable to recover front pay, he could still seek reinstatement.  (*Id.* at 2–3.)  The Committee likewise found that Mauer's declaration did not remove the possibility of his changing his demands if he was unable to recover front pay.  (*Id.* at 3.)

## IV.   MAUER'S LAWSUIT SEEKING IMMEDIATE PAYMENT OF HIS BENEFIT

Mauer filed the Complaint in this lawsuit on June 13, 2023.  The Complaint asserts two causes of action against the NBA, NBA Services and the Committee.  The first count alleges that Defendants violated the terms of the Plan and ERISA by denying Mauer's claim for benefits and is brought under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  (*See* Compl. ¶¶ 34–40.)  The second count makes similar allegations and is brought as a fiduciary breach claim under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  (*See id.* ¶¶ 41–44.)

## STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not be enough.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint" does not apply to legal conclusions or "[t]hreadbare recitals

5

of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Although *Twombly* does not impose a heightened pleading standard, "it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). Importantly, a complaint "stops short of the line between possibility and plausibility of entitlement to relief" when it "pleads facts that are merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

Where, as here, a plaintiff is seeking recovery of a benefit allegedly owing under the terms of an ERISA plan, the court's evaluation of a plan administrator's benefit determination is guided further by unique rules governing such claims. Specifically, the court's review is limited to the administrative record of the benefit determination. *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995); *see also Casagrande v. Siemens AG*, No. 11-cv-5442, 2013 WL 2489933, at *8 (S.D.N.Y. June 11, 2013) (excluding from consideration documents not part of the administrative record), *aff'd sub nom. Casagrande v. Siemens Corp.*, 556 F. App'x 54 (2d Cir. 2014). Furthermore, the court will review the benefit determinations under an arbitrary and capricious standard of review where the plan gives the administrator discretionary authority to determine eligibility for benefits or construe the terms of the plan; otherwise, a *de novo* standard applies. *See Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 145 (2d Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see also In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018) (describing standard).

Under the arbitrary and capricious standard, a court may set aside a plan administrator's determination only where the decision was "without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 89 (2d Cir.

2021) (citations omitted).  "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance."  *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (citation omitted); *see Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) ("review is highly deferential to a plan administrator").  Moreover, if a plan administrator and claimant "offer rational, though conflicting, interpretations of plan provisions," under the arbitrary and capricious standard of review "the administrator's interpretation must be allowed to control."  *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (citation omitted).

Here, the Plan Document grants the Committee "complete control in the administration [of the Plan]," and provides that the Committee's decision "as to any disputed question . . . including questions of construction, interpretation and administration shall be final, binding and coercive."  (Plan § 14.3.)  Courts in the Second Circuit have held such language sufficient to confer discretion.  *See Manning v. Metal Lathers' Loc. 46 Pension Fund*, No. 11-cv-7105, 2013 WL 1287336, at *3 (S.D.N.Y. Mar. 28, 2013) (holding language similar to that in Plan "clearly" conferred discretion, and applying arbitrary and capricious standard); *see also Neely v. Pension Tr. Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus.*, No. 00-cv-2013, 2003 WL 21143087, at *7 (E.D.N.Y. Jan. 16, 2003), *order clarified*, 2003 WL 21448872 (E.D.N.Y. June 4, 2003) (holding arbitrary and capricious standard applied where plan stated that "the decision of the [p]ension [c]ommittee . . . is final and binding"); *Rudolph v. Joint Indus. Bd. of the Elec. Indus.*, 137 F. Supp. 2d 291, 299 (S.D.N.Y. 2001) (holding plan conferred discretion where it stated committee was "sole judge of the . . . application and interpretation of this Plan").

Accordingly, the Committee's determination that Mauer was not entitled to immediate receipt of his pension benefit may be overturned only if it is found to be arbitrary and capricious.

## **ARGUMENT**

## I.   **MAUER'S CLAIM FOR BENEFITS UNDER ERISA SECTION 502(a)(1)(B) SHOULD BE DISMISSED**

The Court should dismiss Mauer's claim for immediate payment of his pension benefit because the Committee reasonably concluded that: (1) the Plan does not enable a participant to commence receipt of a benefit when there is uncertainty as to whether the participant will return to covered employment; and (2) there is such uncertainty with respect to Mauer, in light of the lawsuit he filed against the NBA challenging the termination of his employment.

### A.   **The Committee Did Not Unreasonably Conclude That Benefit Payments Cannot Commence If There Is Uncertainty As To Whether A Participant Will Return To Covered Employment.**

The Committee determined that the Plan precludes payment of benefits if there is uncertainty as to whether a participant might return to covered employment.  Mauer has not contested this construction of the Plan.  Even if he had, that determination cannot be overturned unless it is "without reason, unsupported by substantial evidence, or erroneous as a matter of law."  *See Mayer*, 9 F.4th at 89 (citations omitted).  That standard cannot be satisfied here, as the Committee's construction of the Plan is entirely reasonable.

To begin with, the Committee's determination accords with a reasonable construction of the Plan language.  As discussed above, the Plan does not permit a benefit to be disbursed until the participant experienced a retirement from employment or has terminated employment.  (Plan § 8.1(b).)  Mauer clearly did not elect to retire, so the issue before the Committee was whether he has terminated employment.  While the Plan does not define when a participant has terminated employment, the Committee's conclusion regarding its meaning is consistent with the ordinary

meaning of the term "termination," which requires finality. *See Galli v. PricewaterhouseCoopers LLP Notice/Severance Policy*, No. 19-cv-7224, 2020 WL 4605240, at *9–10 (S.D.N.Y. Aug. 11, 2020) (applying ordinary and Merriam-Webster's meaning to plan term in holding that participant was not entitled to a written notice); Merriam-Webster's Dictionary (termination means "end in time or existence" such as "the termination of life"), https://www.merriam-webster.com/dictionary/termination (last visited July 14, 2023); *see also O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 59–60 (2d. Cir. 1994) (holding that certain "earnings" as construed by the plan were not includible in plaintiffs' pensionable earnings); *Stets v. Securian Life Ins. Co.*, No. 17-cv-9366 , 2020 WL 1467395, at *5 (S.D.N.Y. Mar. 25, 2020) (holding that plaintiff was not entitled to life insurance proceeds because defendants' interpretation of plan terms concerning beneficiary designation changes controlled).

The Committee's construction of the Plan is also reasonable insofar as it avoids any risk of challenge to the Plan's status as a tax-qualified plan.[3]  "The IRS requires that in order to receive a distribution from a qualified plan, you 'must have experienced a bona fide termination of employment in which the employer/employee relationship is *completely severed*.'"[4]  *Chavis v.*

---

[3] As a "qualified retirement plan" compliant with 26 U.S.C. § 401(a), the Plan has certain tax benefits.  For example: (i) the employer can claim a tax deduction for the year for which it contributes to the plan; (ii) a plan participant generally does not include in income the value of the retirement benefit until the benefit is actually received; and (iii) income on the assets of the trust is not taxed at the trust level.  A plan that fails to satisfy the tax qualification rules may be disqualified.  If a plan is disqualified, the employer may in some cases not receive a current deduction for its contributions.  Further, highly compensated participants could be required to include the value of a contribution or benefit in income even if the contribution or benefit is not distributable at that time per the terms of the plan.  Finally, the trust would lose its tax exemption.  *See* Employee Benefits Committee of the American Bar Association's Labor and Employment Law Section, *Employee Benefits Law, Chapter 5. Regulation of Qualified Retirement Income Plans Generally* (current through December 31, 2020, with selected updates through April 30, 2021).

[4] The Internal Revenue Code does require distributions to former participants who reach age 73, 26 U.S.C. § 401(a)(9)(C), but Mauer is younger.  The Code also allows for in-service distributions to participants who reach age 59 1/2 but only if the plan expressly provides for such distributions, 26 U.S.C. § 401(a)(36)(A), which is not the case here.

*Plumbers & Steamfitters Loc. 486 Pension Plan*, No. 17-cv-2729, 2018 WL 4052182, at *3 (D. Md. Aug. 23, 2018) (quoting IRS Information No. 2000-0245 (Sept. 6, 2000)).  In *Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*, No. 20-cv-3791, 2022 WL 610340, at *2 (2d Cir. Mar. 2, 2022), the Second Circuit recognized that a concern over preserving a plan's tax-qualified status helped to justify a construction of "termination" to mean that there are no prospects for a return to covered employment.  *See also Aracich v. Bd. of Trs. of the Emp. Benefit Funds of Heat & Frost Insulators Loc. 12*, 629 F. Supp. 3d 103, 113 (S.D.N.Y. 2022) ("it was reasonable, and consistent with the Trustees' obligations to Plan participants, to interpret the Plans in a manner that will maintain the pension fund's tax-qualified status").  Similarly, here, in order to remove any risk of Plan disqualification, it was reasonable for the Committee to interpret whether a participant has terminated employment to mean that there were no prospects of a return to employment.

**B.     The Committee Reasonably Found Uncertainty As To Whether Mauer Might Be Reinstated As a Result of The Discrimination Lawsuit.**

This lawsuit rests entirely on Mauer's contention that there are no prospects for his returning to work as an NBA referee.  In support of that contention he argues that (1) a claim to reinstatement is waived because he did not request reinstatement in the Discrimination Lawsuit; (2) a claim to reinstatement is waived because he requested front pay in the Discrimination Lawsuit; and (3) he did not intend for his Discrimination Lawsuit to request reinstatement.  (*See* Appeal at 2–3); (Compl. ¶¶ 25–31.)  The Committee reasonably determined that none of these arguments dispel the uncertainty as to whether Mauer may be reinstated, and none of the cases cited by him in support of these arguments hold otherwise.

      **1.**      **Mauer's Failure to Explicitly Request Reinstatement In The Discrimination Lawsuit Does Not Prevent A Court From Awarding It To Him.**

The cases Mauer cites do not support his argument that failing to explicitly request reinstatement at the outset of a lawsuit means that reinstatement cannot be awarded. If anything, they support the contrary conclusion.

Three of the cases cited are distinguishable because they involved motions for a default judgment. *See Silge v. Merz*, 510 F.3d 157 (2d Cir. 2007); *Cent. Fla. Council Boy Scouts of Am., Inc. v. Rasmussen*, No. 07-cv-1091, 2010 WL 1258070 (M.D. Fla. Mar. 29, 2010), *aff'd*, 412 F. App'x 230 (11th Cir. 2011); *Toyo Tire & Rubber Co., Ltd v. Fitinparts-USA, LLC*, No. 15-cv-513, 2016 WL 5219465 (C.D. Cal. June 3, 2016). In that context, courts decline to surprise defaulting defendants by awarding plaintiffs relief that was not clearly requested. *See Silge*, 510 F.3d at 159 ("It would be fundamentally unfair to have the complaint lead [a defaulting] defendant to believe that only a certain type and dimension of relief was being sought and then . . . allow the court to give a different type of relief or a larger damage award.") Three of the other cases cited rejected efforts to add previously unidentified claims for relief because the plaintiffs only attempted to add them to avoid a finding that their complaints were moot. *See Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 90 (2d Cir. 2005); *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 141–42 (2d Cir. 1994); *Governor Wentworth Reg'l Sch. Dist. v. Hendrickson*, 201 F. App'x 7, 9 (1st Cir. 2006). As the court explained in *Governor*, when a plaintiff is attempting to avoid a finding of mootness, courts "are especially reluctant . . . to read a damages claim into" a boilerplate claim for relief. 201 F. App'x at 9 (citation omitted). *See also Fox*, 42 F.3d at 141–42 (rejecting argument that a pleading's boilerplate language included a request for money damages upon finding that the plaintiff was attempting to "breathe life into a moribund dispute" by belatedly claiming money damages after

11

a "tortured history" of the case). By contrast, in contested proceedings like the Discrimination

Lawsuit, the federal rules expressly provide that a "final judgment should grant the relief to

which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed.

R. Civ. P. 54(c); *see Silge*, 510 F.3d at 159.

The other cases cited by Mauer, *M.H. v. Pelham Union Free School District*, 168 F.

Supp. 3d 667 (S.D.N.Y. 2016) and *Blake v. Dowe*, 36 F. Supp. 3d 271 (D. Conn. 2014), are

distinguishable for different reasons. In *M.H.*, the claim the court held was waived was for

compensatory damages for a particular time period for which plaintiff presented no evidence.

168 F. Supp. 3d at 679–80. In *Blake*, a claim was found to be waived because it was not

supported by the plaintiff's evidence, theories of wrongdoing or statutory causes of action. 36 F.

Supp. 3d at 278. Here, by contrast, there is no question that Mauer has alleged claims of

discrimination and that, if he were to prevail on such claims, reinstatement would be among the

remedies the court could consider awarding to him. *See, e.g.*, Discrimination Lawsuit Compl. ¶¶

110, 114 ("Plaintiffs suffered adverse action by being terminated from their employment due to

their religious beliefs" in violation of Title VII of the Civil Rights Act); *see also* 42 U.S.C. §

2000e–5(g)(1) (permitting award of reinstatement).

In summary, none of the cases cited by Mauer support the conclusion that, by failing to

specifically seek reinstatement relief in his Complaint, he has waived his right to seek such

relief.

## 2.     Mauer's Request For Front Pay In The Discrimination Lawsuit Does Not Preclude A Court From Awarding Him Reinstatement Instead.

Mauer contends that by expressly seeking front pay relief, he has precluded himself from

seeking reinstatement. Although it is true that a court would not award Mauer both forms of

relief, the Federal Rules permitted him to demand both front pay and reinstatement in the

complaint, and thus to determine later which form of relief he prefers.  Fed. R. Civ. P. 8(d) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically . . . regardless of consistency.")  The fact that Mauer asserts he already made his election here does not mean that he could not reverse course later and seek reinstatement in lieu of front pay, particularly if front pay is not available to him.  *See Teutscher v. Woodson*, 835 F.3d 936, 955 (9th Cir. 2016) (finding that plaintiff retained the option to elect between reinstatement or front pay all the way until jury instructions).[5]

### 3. Mauer's Affidavit Does Not Remove the Prospects of His Potentially Being Reinstated.

For similar reasons, Mauer's sworn statement that he does not intend to request reinstatement in the Discrimination Lawsuit adds nothing to his claim.  (*See* Appeal at Ex. A.)  This is merely a statement of his current intentions—intentions that may change if, for the reasons stated above, a court were to determine that he is not entitled to front pay.

For the foregoing reasons, the Court should dismiss Mauer's claim for benefits under Section 502(a)(1)(B).

## II.   MAUER'S FIDUCIARY BREACH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE AND FAILS TO STATE A CLAIM

Mauer's fiduciary breach claim in Count II seeks recovery of plan benefits, and thus is duplicative of the relief sought pursuant to the claim for benefits under Section 502(a)(1)(B).  (*Compare* Compl. ¶ 40 *with* Compl. ¶ 43.)  As such, it cannot be asserted as an independent cause of action for equitable relief under ERISA Section 502(a)(3).  *See Frommert v. Conkright*, 433 F.3d 254, 269–70 (2d Cir. 2006) (affirming dismissal of Section 502(a)(3) claim that was

---

[5] The fact that the deadline for amending the complaint to state additional claims has already elapsed (*see* Discrimination Lawsuit Compl. ¶ 33) does not prevent Mauer from seeking different or additional forms of relief for the claims he already asserted, particularly since the complaint broadly reserves his right to seek additional relief.

"couch[ed] . . . in equitable terms" because it was a claim for calculation of benefits consistent

with the terms of the plan, and Section 502(a)(1)(B) provided adequate relief); *Babino v.

Gesualdi*, 278 F. Supp. 3d 562, 580–81 (E.D.N.Y. 2017) (denying motion for leave to amend

complaint to add fiduciary breach claim that sought declaratory judgment of plaintiff's

entitlement to benefits, finding the claim did "not seek 'appropriate equitable relief' under

Section 502(a)(3) because [it was] available elsewhere, and [plaintiff's] claim [was] duplicative

of his claims under Section 502(a)(1)(B)"), *aff'd*, 744 F. App'x 30 (2d Cir. 2018).

Even if not dismissed as duplicative of his benefit claims, Mauer's fiduciary breach claim

should be dismissed for failure to plead the requisite elements of the claim.  To state a claim for

breach of fiduciary duty under ERISA, a plaintiff must allege that: (i) the defendant was

performing a fiduciary function when it engaged in the challenged conduct; (ii) the defendant

breached a fiduciary duty; and (iii) plaintiff is entitled to equitable relief.  *In re DeRogatis*, 904

F.3d at 190.  Mauer's principal claim is that the Committee breached its fiduciary duties by

denying his claim for a benefit.  But if, for the reasons stated, his claim for a benefit was properly

denied, there can be no basis for a claim of fiduciary breach for failure to adhere to the terms of

the Plan.  *See Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*, No. 13-cv-85,

2019 WL 1428083, at*17 (W.D.N.Y. Mar. 28, 2019) (dismissing fiduciary breach claim based

on defendants' decision to suspend plaintiffs' pension benefits, because in so doing defendants

acted reasonably and prudently in correcting their "erroneous approval of Plaintiffs' pensions in

order to retain the tax-exempt status of the Fund"), *R&R adopted by*, 2020 WL 5939202

(W.D.N.Y. Oct. 7, 2020), *aff'd*, No. 20-cv-3791, 2022 WL 610340 (2d Cir. 2022); *Roe*, 2014

WL 1760343, at *8 (dismissing fiduciary breach claim premised on defendants' enforcement of

allegedly unlawful plan provision because fiduciaries are required to carry out the terms of the

14

plan so long as they are consistent with ERISA, and "the Court's determination that the Plan does not violate ERISA . . . precludes Plaintiff's fiduciary duty argument").

In short, Mauer has failed to plead a plausible claim of fiduciary breach that is independent of his claim for a benefit.

## III.   THE NBA AND NBA SERVICES ARE NOT PROPER DEFENDANTS AND THE CLAIMS AGAINST THEM SHOULD BE DISMISSED

Even if the Complaint is not dismissed in its entirety, it should be dismissed as to the NBA and NBA Services, as they had no fiduciary responsibility with respect to the determination of Mauer's claim.  In a suit to recover benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), only the plan and the administrator of the plan may be held liable. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998); 29 U.S.C. § 1132(d)(2) ("Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity . . ."); *Kazazian v. Bartlett & Bartlett LLP*, No. 03-cv-7699, 2006 WL 2563517, at *3 (S.D.N.Y. Sept. 6, 2006) ("Her choice of defendant may be an accurate reflection of a personal grievance, but it is not an accurate reflection of the proper party to an action under ERISA.").  The Plan document clearly designates the Committee as the Plan administrator and the Committee had sole authority to consider Mauer's claim.  (Plan § 14.3). Mauer has not alleged any facts suggesting that the NBA or NBA Services had any administrative responsibilities.  Accordingly, the NBA and NBA Services should be dismissed because they cannot be held liable for the alleged wrongdoing of the Committee.

## CONCLUSION

For the reasons explained above, this Court should dismiss Plaintiff's Complaint with prejudice.

Dated: July 17, 2023
        New York, NY

Respectfully submitted,

*/s/ Myron D. Rumeld*
   Myron D. Rumeld
Daniel B. Wesson
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
mrumeld@proskauer.com
dwesson@proskauer.com

*Counsel for Defendants*