UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH MAUER,
                       Plaintiff,

       -v-

NATIONAL BASKETBALL
   ASSOCIATION, *et al.*,
                       Defendants.

23-CV-4937 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Kenneth Mauer brings this action against Defendants the National Basketball Association ("NBA"), NBA Services Corp. ("NSC"), and the Pension Committee of the National Basketball Association Referees' Pension Plan ("Committee") under the Employee Retirement Income Security Act ("ERISA") for violations of 29 U.S.C. § 1132(a)(1)(B) and (a)(3).[1] Mauer is a participant in the NBA Referees' Pension Plan ("Plan") and seeks review of the Committee's denial of his application for payment of his pension benefits under the Plan. Presently before the Court are Defendants' motion to dismiss and Mauer's cross-motion for summary judgment.

---

[1] In their motion to dismiss, Defendants contend that the NBA and NBA Services Corp. are not proper defendants in this action. Mauer concedes this argument in his opposition to the Defendants' motion to dismiss and cross-motion for summary judgment. (ECF No. 18-1 at 1 n.1.) Defendants' motion to dismiss the complaint as to the NBA and NSC is thus granted.

      In addition, in their motion to dismiss, Defendants contend that Mauer's second count asserting a fiduciary breach claim under 29 U.S.C. § 1132(a)(3) should be dismissed on the basis that it is duplicative of the first count and is therefore improper. Mauer concedes this argument in his opposition to the Defendants' motion to dismiss and cross-motion for summary judgment. (ECF No. 18-1 at 1 n.1.) Defendants' motion to dismiss the second count is thus granted.

I.     **Background**

    A.     **Factual Background**

The following facts are drawn from the Complaint and are assumed to be true for purposes of resolving Defendants' motion to dismiss. Mauer was employed by the NBA and then NSC as a referee beginning in 1986. (ECF No. 1 ("Compl.") ¶ 8.) Before the 2021-2022 season, NSC, in conjunction with the National Basketball Referees Association, the union representing Mauer and other NBA referees, implemented a policy requiring referees to be vaccinated against COVID-19. (*Id.* ¶ 9.) The policy included a religious exemption for individuals with sincerely held religious objections to being vaccinated. (*Id.*) Mauer applied for a religious exemption and requested an accommodation in September 2021. (*Id.* ¶ 10.) NSC determined that Mauer's religious beliefs were not sincerely held, and thus denied his request for an exemption. (*Id.* ¶ 11; *see* ECF No. 23-1). NSC subsequently suspended him without pay or retirement benefits for the entirety of the 2021-2022 season and ultimately terminated him on September 1, 2022, based on his failure to comply with the vaccination policy. (*Id.* ¶ 12.)

On November 14, 2022, Mauer and two other NBA referees who were terminated for their failure to comply with NSC's vaccination policy filed a lawsuit against the NBA and NSC challenging their termination. (*Id.* ¶ 13; *see* ECF No. 17-1); *Phillips v. Nat'l Basketball Ass'n*, No. 22-CV-9666 (S.D.N.Y) ("Discrimination Lawsuit"). In the Discrimination Lawsuit, the referees assert five causes of action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*; New York State Human Rights Law, N.Y. Exec. Law § 296; Title 8, Civil Rights, Unlawful Discriminatory Practices, N.Y.C. Admin. Code § 8-107; Civil Action for Deprivation of Rights, 42 U.S.C. § 1983; and the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* (Compl. ¶ 13; *See* ECF No. 17-1.) Mauer seeks monetary relief only, specifically: (1) compensatory damages, which include lost wages and front pay, reputational

damages and damages for emotional pain and suffering; (2) punitive damages; (3) interest; and (4) attorney's fees and costs. (Compl. ¶ 13.) He is not seeking reinstatement as an NBA referee. (*Id.*)

Mauer was a participant in the National Basketball Association Referees Pension Plan. (ECF No. 1-1 ("Plan").) The Plan is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2) and is administered by the Committee. (Compl. ¶ 15.) On January 17, 2023, Mauer submitted a claim to the Committee to receive payment of his pension benefit under the Plan, citing the termination of his employment as the reason for payment of his Plan benefit. (*Id.* ¶ 14.) On March 1, 2023, the Committee issued a determination in which it denied Mauer's claim. (*Id.* ¶ 22; ECF No. 1-2.) Specifically, the Committee found that, in light of the pendency of the Discrimination Lawsuit, there was uncertainty as to whether Mauer might return to employment as an NBA referee, and thus that he had not "attained a distribution event," "such as retirement or termination of employment," within the meaning of the Plan. (Compl. ¶ 23.) The Committee concluded that a request in the final section of the complaint in the Discrimination Lawsuit for "such other relief as the Court deems just and proper . . . may include reinstatement of employment." (*Id.*) Therefore, according to the Committee, it was "not sufficiently clear" that Mauer "attained a distribution event for purposes of the Plan." (*Id.*) Mauer appealed the Committee's determination on March 21, 2023. (*Id.* ¶ 24; ECF No. 1-3.) The Committee denied Mauer's appeal on May 19, 2023. (Compl. ¶ 32; ECF No. 1-4.)

The following facts are drawn from Mauer's Local Rule 56.1 Statement (ECF No. 18-2 ("Mauer's SOF")) and Defendants' Response to Mauer's Rule 56.1 Statement (ECF No. 22 ("Defs.' SOF Opp.").) The facts recited here are undisputed unless otherwise noted, and they are construed in the light most favorable to Defendants as the nonmovants. Mauer was a participant

in the National Basketball Association Referees Pension Plan. (Mauer's SOF ¶ 7.) Participants in the Plan accrue retirement benefits based on their years of service. (*Id.* ¶ 8.) The only "permitted distribution events under the Plan" for receipt of those benefits "are retirement from employment, or termination of employment, attainment of age 70 ½ while actively employed as a referee, disability, or death." (*Id.*) Section 8.2(a)(iii) of the Plan states that the payment of a referee's pension benefit "shall . . . commence no later than sixty (60) days after the close of the Plan Year in which the latest of the following events occurs . . . such Referee's . . . termination of employment." (Defs.' SOF Opp. ¶ 11.)

### B.  Procedural History

Mauer filed the complaint in this case on June 13, 2023. (ECF No. 1.) Defendants filed a motion to dismiss on July 17, 2023. (ECF No. 15.) On July 31, 2023, Mauer filed an opposition to Defendants' motion to dismiss and cross-moved for summary judgment. (ECF No. 18.) Defendants filed their opposition to Mauer's motion for summary judgment and reply in support of their motion to dismiss on August 14, 2023. (ECF No. 21.) Mauer filed a reply in support of his motion for summary judgment on August 26, 2023. (ECF No. 26.)

## II.  Legal Standards

### A.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must "draw all inferences in the

light most favorable to the non-moving party[],"  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "In considering a motion to dismiss. . ., a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

B.     **Motion for Summary Judgment**

Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Plaintiff, as the moving party, "has the burden of demonstrating that no genuine issue of material fact exists." *EMA Fin., LLC v. Flitways Tech., Inc.*, No. 20-CV-324, 2022 WL 1910078, at *2 (S.D.N.Y. June 3, 2022) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)). In deciding whether such a showing has been made, here, the Court resolves all ambiguities and draws all permissible inferences in favor of Defendants, against whom summary judgment is sought. *Friend v. Gasparino*, 61 F.4th 77, 84 (2d Cir. 2023).

III.     **Discussion**

A.     **Discretion in the Plan**

When reviewing the denial of certain benefits under ERISA, the Court "give[s] effect to [a plan's] unambiguous meaning to the extent that one exists." *Buckley v. Slocum Dickson Med. Grp.*, PLLC, 585 F. App'x 789, 793 (2d Cir. 2014) (citing *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen.*, 37 F.3d 55, 58-59 (2d Cir. 1994)). The Court applies a "*de novo*

5

standard of review" in reviewing a plan administrator's interpretation of "unambiguous plan terms" because "unambiguous language leaves no room for the exercise of discretion." *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 121 (2d Cir. 2022) (quoting *O'Neil*, 37 F.3d at 59)).

If the plan language is ambiguous, the Court also reviews it "under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also O'Neil*, 37 F.3d at 59. "[P]lans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard." *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 145 (2d Cir. 2003) (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 115). Under the arbitrary and capricious standard, "[a] court may overturn a plan administrator's decision to deny benefits only if the decision was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* at 146 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 141 (2d Cir. 2010) (internal citations and quotation marks omitted). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (internal citations and quotation marks omitted). "Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." *Id.* at 133 (internal citations and quotation marks omitted).

"[A] district court's review under the arbitrary and capricious standard is limited to the administrative record."  *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). "Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the [administrator's] decision was arbitrary and capricious, it must remand to the [administrator] with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality.'"  *Id.*

Section 14.3 of the Plan grants the Committee broad discretion to administer the Plan:

> The Committee shall have all powers which are reasonably necessary to carry out its responsibilities under the Plan including, but not by way of limitation, the power to construe the Plan and to determine all questions that shall arise hereunder, and shall also have all the powers elsewhere in the Plan conferred upon it.  Such powers shall include, but are not limited to, the power to determine questions relating to eligibility for, and the amount of, benefits under the Plan.  Except as otherwise provided herein, the decision of the Committee as to any disputed question arising hereunder, including questions of construction, interpretation and administration shall be final, binding and conclusive.

This provision clearly vests the Committee with broad discretionary authority to interpret ambiguous language in the Plan and determine eligibility for benefits.  *See, e.g.*, *Rudolph v. Joint Indus. Bd. of Elec. Indus.*, 137 F. Supp. 2d 291, 298 (S.D.N.Y. 2001) ("The Pension Committee clearly had discretionary authority to determine eligibility for benefits under the Pension Fund. Section 5.19 of the Plan specifically states: The Committee shall, subject to the requirements be the sole judge of the standard of proof required in any case and the application and interpretation of this Plan and decisions of the Committee shall be final and binding on all parties."); *Boison v. Ins. Servs. Off., Inc.*, 829 F. Supp. 2d 151, 158 (E.D.N.Y. 2011) ("It is undisputed, and confirmed by a review of the relevant plan confirms, that the Administrator did have discretionary authority under the Plan. Article IX of the Plan states that 'The Plan Administrator shall have the sole

authority . . . to make all such determinations and interpretations of the Plan as may be required for its proper administration."). Thus, to the extent that the Plan language is ambiguous, the Court will review the Committee's decision under the arbitrary and capricious standard. *See Celardo*, 318 F.3d at 145 (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 115).

### B. Plan Interpretation

The Court must first determine if the language of the Plan at issue is ambiguous. Mauer contends that he has been terminated and is thus a "terminated referee," entitling him to his benefits pursuant to Section 8.2(a)(iii) of the Plan.

The provision at issue is reproduced below:

> Article VIII: Form and Payment of Benefits
>
> 8.2 Time When Pension Benefit Payments are Paid.
>
> (a) The payment of a Referee's Pension Benefit shall, except as provided in paragraphs (b) and (c) below, commence as soon as practicable after his Annuity Starting Date and after he has filed his written election on forms provided by the Committee. However, in all events, such payment shall commence no later than sixty (60) days after the close of the Plan Year in which the latest of the following events occurs:
>
> (i) the attainment by such Referee of age sixty-five (65);
>
> (ii) the tenth anniversary of the date on which such Referee was first eligible to participate in the Plan under Section 2.1;
>
> (iii) subject to Section 4.2, such Referee's retirement or termination of employment.

The phrase "termination of employment" in Section 8.2(a)(iii) is not defined in the Plan. Defendants contend that although the provision is clear that a benefit payment commences after a "termination of employment," there is ambiguity as to when a "termination of employment" has taken place. (ECF No. 21 at 4.) According to Defendants, a "Terminated Referee" could take on at least two meanings: (1) "a Referee who was terminated by the NBA"; and (2) "a Referee who

8

was terminated and has no reasonable prospects for returning to work as a Referee." (ECF No. 21 at 3.) Therefore, Defendants contend, "the Plan has an ambiguity requiring the Committee's interpretation, and that interpretation is entitled to substantial deference." (*Id.*) Mauer contends that the terms of the Plan are unambiguous, and thus, the Committee had no discretion to deviate from the terms of the Plan, and the Court should apply the terms of the Plan as written. (ECF No. 18 at 3.)

To determine whether the phrase "termination of employment" is ambiguous, "[t]his Court will review the Plan as a whole, giving terms their plain meanings." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (internal citations omitted). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." *O'Neil,* 37 F.3d at 59 (internal quotation marks and citations omitted). "Whether contract language is ambiguous is a question of law that is resolved by reference to the contract alone." *Id.* at 58-59 (internal quotation marks and citations omitted).

Black's Law Dictionary defines "termination of employment" as "[t]he complete severance of an employer-employee relationship." *Termination*, Black's Law Dictionary (11th ed. 2019); *see also New York's Health & Hum. Serv. Emps. Union, 1199/SEIU, AFL-CIO v. Grossman*, No. 02-CV-6031, 2007 WL 2907386, at *20 (E.D.N.Y. Oct. 3, 2007) ("The tenth edition of Merriam-Webster's Collegiate Dictionary defines the word 'terminate' in the employment context as follows: 'To discontinue the employment of.'") (quoting Merriam-Webster's Collegiate Dictionary1212 (10th ed. 2001)). Defendants contend that "'termination' as used in the Plan and elsewhere, is generally understood to mean a permanent, irrevocable cessation, like 'death, retirement, or disability.'" (ECF No. 21 at 4.) The Court disagrees.

While the dictionary definition of "termination of employment" does require that the severance of the employer-employee relationship be complete, it does not require that severance be permanent and irrevocable.  As used in the Plan specifically, the phrase "termination of employment" also does not require that severance of the employer-employee relationship be permanent and irrevocable.  The Plan explicitly contemplates that a former referee could be re-hired by the employer: the Plan does not distinguish among referees that became "former referees" through termination or by other means.  Sections 2.3 and 2.4 state:

> Article II: Eligibility and Participation
>
> 2.3. A former Referee who had participated in the Plan and who again becomes a Referee after having terminated his employment with the Employer, shall again participate in the Plan as of the first day of the Plan Year in which he resumes employment, provided that he is on the Referee's Roster during the Plan Year in which he resumes employment. Notwithstanding anything to the contrary herein, effective June 1, 2010, any former Referee who had participated in the Plan and who again becomes a Referee on or after June 1, 2010 shall not become eligible to again participate in the Plan.
>
> 2.4. Any Referee who receives the full value of his Pension Benefit, as defined in Section 8.1, (or who is deemed to have received a distribution of his Pension Benefit under Section 7.1(b)) shall thereupon cease to participate in the Plan and neither he nor any person on his behalf shall have any further rights to benefits under the Plan.

Other provisions of the Plan also address the situation in which a former referee is subsequently re-employed, including after termination of employment.  *See, e.g.*, Sections

4.1(s),[2] 4.1A(m),[3] 7.1(a)-(d),[4] 8.6,[5] and 11C.1(e).[6]  Based on a "review of the Plan as a whole,

giving terms their plain meanings," the Court concludes that the phrase "termination of

---

[2] Article IV: Normal Retirement.

4.1. "Amount of Normal Retirement Benefit. The Normal Retirement Benefit of a Referee retiring on his Normal Retirement Date, as determined on the basis of a monthly benefit payable for the life of the Referee with one hundred twenty (120) monthly payments guaranteed, shall be the following: . . .

(s) If a former Referee, who, had received payment of his entire benefit under the Plan, again becomes employed as a Referee, the benefit payable to him shall be equal to the excess (if any) of: (i) the applicable Normal Retirement Benefit to be paid to the Referee in accordance with this Section over (ii) the Normal Retirement Benefit reflected in the benefit payment previously paid to such Referee under the Plan."

[3] Article IV: Normal Retirement.

4.1A. "Amount of Normal Retirement Benefit. The Normal Retirement Benefit of a Referee retiring on his Normal Retirement Date, who is credited with a Year of Referee Service with respect to any Regular Season that commences in 2004 or any year thereafter, as determined on the basis of a monthly benefit payable for the life of the Referee with one hundred twenty (120) monthly payments guaranteed, shall be the following: . . .

(m) (i) If a former Referee, who, had received payment of his entire benefit under the Plan (as determined under Section 4.1 or Section 4.1 A), again becomes employed as a Referee and is credited with a Year of Referee Service with respect to the Regular Season commencing in 2004 or any Regular Season thereafter, the benefit payable to him shall be equal to the excess (if any) of: (A) the applicable Normal Retirement Benefit to be paid to the Referee as determined in accordance with this Section 4.1A over (B) the Normal Retirement Benefit reflected in the benefit payment previously paid to such Referee under the Plan.

(ii) If a former Referee, who, is receiving payment of his benefits under the Plan (as determined under Section 4.1 or Section 4.1A), again becomes employed as a Referee and is credited with a Year of Referee Service with respect to the Regular Season commencing in 2004 or any Regular Season thereafter, the benefit being paid to such Referee prior to his reemployment shall continue until he is once again no longer employed as a Referee. At such time, the benefit payable to the Referee shall be equal to the excess of: (A) the applicable Normal Retirement Benefit to be paid to the Referee as determined in accordance with this Section 4.1A over (B) the Actuarial Equivalent of the benefit payments previously received by such Referee; provided, however, that in no event shall the benefit payable to such Referee after he is once again no longer employed as a Referee be less than the benefit that the Referee was receiving immediately prior to his reemployment as a Referee."

[4] Article VII: Termination of Employment.

7.1. "Amount and Payment of Benefit after Termination of Employment.

(a) If the employment of a Referee is terminated before his Normal Retirement Date or Early Retirement Date for reasons other than death or incurring a Total Disability, he shall

11

employment" is unambiguous and cannot bear the meaning Defendants have ascribed to it. *Fay*, 287 F.3d at 104. On this basis, the Court concludes that the Committee is not entitled to deference in interpreting the phrase "termination of employment," and instead, the terms of the

---

become a 'Terminated Referee' and shall, except as otherwise provided in this Section, be vested in a percentage of his Accrued Benefit based on his completed Years of Referee Service to his date of termination: . . .

(d) Notwithstanding any other provision of this Section 7.1 to the contrary, if a Terminated Referee who is not vested in his Accrued Benefit under this Section resumes employment as a Referee, his Years of Referee Service prior to becoming a Terminated Referee shall be taken into account in determining such Referee's Years of Referee Service under Section 7.1."

[5] Article VIII: Form and Payment of Benefits.

8.6. "Reemployment of a Former Referee. If a Referee who is receiving benefit payments is reemployed by the Employer as a Referee, his Pension Benefit payments shall cease with the last payment due immediately prior to his reemployment. Pension Benefit payments shall recommence on the first day of the month coincident with or next following his subsequent retirement date. The Pension Benefit payable to said Referee on his subsequent retirement date shall be equal to (a) plus (b) minus (c):

(a) the Pension Benefit he had accrued prior to his reemployment;

(b) the Pension Benefit accrued between his date of reemployment and his subsequent retirement date;

(c) the Actuarial Value of the Pension Benefit payments, if any, which he received during a prior retirement and before his Normal Retirement Date."

[6] Article XIC: Limitations on Benefits for Limitation Years Commencing on or After June 1, 2008.

11C.1(e). "A Referees High 3-Year Limitation shall not include, for any Limitation Year, Compensation that is in excess of the limitation under Code Section 401(a)(17) that is in effect for the calendar year in which such Limitation Year begins. If the Referee has less than three consecutive years of service, Compensation shall be averaged over the Referee's longest consecutive period of service, including fractional years, but no less than one year. In the case of a Referee who is rehired by the Employer after a severance of employment, the Referee's High 3-Year Limitation shall be calculated by excluding all years for which the Referee performs no services for, and receives no Compensation from, the Employer, and by treating the years immediately preceding and following the excluded years as consecutive. The High 3-Year Limitation for Referees who have separated from service with a non-forfeitable right to an Accrued Benefit shall be adjusted annually as provided in Code Section 415(d) pursuant to the applicable Treasury Regulations."

Plan must be applied as written. Mauer experienced a termination of employment and is thus entitled to his pension benefits in accordance with Section 8.2(a)(iii) and the terms of the Plan.

Mauer raises practical considerations that further confirm that the phrase "termination of employment" cannot bear the meaning "permanent, irrevocable cessation." (ECF No. 18-1 at 9-10.) He notes that Defendants' reading that a terminated referee cannot receive benefits from the Plan unless there is certainty that he will not be re-employed "would lead to absurd results." (*Id.* at 9.) Mauer points to several examples of situations in which Mauer could be re-employed for reasons unrelated to the possibility that he may be awarded reinstatement in his Discrimination Lawsuit.[7] Such examples include if Mauer elected to receive a COVID-19 vaccine and thus came into compliance with the NBA's vaccination policy, or if the NBA ended its COVID-19 vaccination policy. (*Id.*) It is not clear under what circumstances it would be *certain* that a terminated referee would never be re-employed by the employer. Defendants respond that the Committee "never suggested that 'termination of employment' requires 100% certainty that a participant will not return to employment," but in "Mauer's particular situation, the level of uncertainty about his potential return militated against immediately disbursing his benefit." (ECF No. 21 at 6.) The Court sees no justification for treating the alleged uncertainty surrounding Mauer's prospect of re-employment any differently than the uncertainty surrounding any former referee's prospect of re-employment. Accepting Defendants' reading would discourage employees like Mauer from bringing claims for wrongful termination, as the

---

[7] Mauer contends that in his Discrimination Lawsuit, he is seeking front pay and is not seeking reinstatement. The parties dispute whether the court in the Discrimination Lawsuit could nevertheless reinstate Mauer to his position. This Court does not reach those arguments, as it concludes that the terms of the Plan are unambiguous, and Mauer is entitled to is benefits regardless of any possibility that he might be reinstated to his position.

commencement of such a lawsuit would entitle Defendants to withhold a plaintiff's pension benefits until the resolution of that lawsuit, which could take years to run its course.

Finally, the Court addresses Defendants' argument that their construction of the term "termination" as "permanent, irrevocable cessation" is reasonable as it preserves the Plan's tax-exempt status.  (ECF No. 16 at 9-10; ECF No. 21 at 6-7 n.6.)  Defendants state that "[t]he IRS requires that in order to receive a distribution from a qualified plan, you 'must have experienced a bona fide termination of employment in which the employer/employee relationship is *completely severed*.'"  (ECF No. 16 at 9-10 (citing *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, No. 17-CV-2729, 2018 WL 4052182, at *3 (D. Md. Aug. 23, 2018)).  Defendants raise a concern over allowing for an "in-service distribution that is not authorized by the Plan." (ECF No. 21 at 6-7 n.6.)  Defendants cite cases (ECF No. 16 at 9-10; ECF No. 21 at 6-7 n.6) in which courts have found that plan administrators' interpretations of the word "retire" as requiring the employee to be completely separated from employment were reasonable because they preserved the plan's tax-exempt status.  *See Metzgar v. U.A. Plumbers & Steamfitters Loc. No. 22 Pension Fund*, No. 20-CV-3791, 2022 WL 610340, at *2 (2d Cir. Mar. 2, 2022), *cert. denied*, 143 S. Ct. 1002 (2023); *Aracich v. Bd. of Trustees of Emp. Benefit Funds of Heat & Frost Insulators Loc. 12*, 629 F. Supp. 3d 103, 113 (S.D.N.Y. 2022), *aff'd*, No. 22-CV-2544, 2023 WL 4692316 (2d Cir. July 24, 2023).  Here, there is no question that Mauer has been completely separated from employment.  The only question is whether that separation is "permanent" and "irrevocable."  For this reason, Defendant's contention and cited cases are inapposite.

For all of the reasons discussed above, the Court concludes that there is no genuine dispute of material fact that the Committee violated the plain terms of the Plan pursuant Section 8.2(a)(iii).  The Court grants Mauer's motion for summary judgment on Count I.

## IV. Conclusion

For the foregoing reasons, Mauer's motion for summary judgment as to liability on Count I is GRANTED.  Defendants' motion to dismiss is GRANTED in part and DENIED in part.

The parties are directed to confer by April 5, 2024, regarding a proposed remedy.  By April 19, 2024, the parties shall file either (1) an agreed-upon proposed judgment or (2) a joint letter with each parties' proposals for further proceedings.

The Clerk of Court is directed to close the motions at ECF Nos. 15 and 18.

SO ORDERED.

Dated: March 13, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge